IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ESTATE OF HAROLD STULLER, deceased, WILMA STULLER, named executor, WILMA STULLER and L.S.A., INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA and its Agency, Secretary, Treasury Department, Internal Revenue Service,<br><br>Defendants. | NO. 11-3080 |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is set for bench trial beginning on April 1, 2013. Pending before the Court are three motions in limine filed by Defendant United States of America.

## I. Motion to Quash Subpoena

Defendant United States of America has moved in limine, pursuant to Rule 45(c)(3)(A)(iv) of the Federal Rules of Civil Procedure, to quash the

subpoena issued to IRS Revenue Agent Mark Wade. The Defendant contends that any testimony from Mr. Wade regarding the audit that led to the assessment against Harold and Wilma Stuller is immaterial to the issues that will be before the Court at trial. Accordingly, Mr. Wade's testimony is not relevant under Rules 401 and 402 of the Federal Rules of Civil Procedure.

The central issue in this case is whether Harold and Wilma Stuller carried on their horse-breeding operation with the intent to earn a profit consistent with 26 C.F.R. § 1.183-2, such that they could properly deduct the losses from that operation during the 2003, 2004, and 2005 income tax years. The Defendant alleges IRS Revenue Agent Mark Wade has no connection to this case, except that he is the revenue agent responsible for the audit that led to the assessment against the Stullers. The Defendant requests that the Court quash the subpoena issued to Mr. Wade because any testimony from him regarding the audit and/or assessment processes is irrelevant to be tried in a tax refund suit.

Rule 45(c)(3)(A)(iv) provides that a court must quash or modify a

2

subpoena that "subjects a person to an undue burden."  The Defendant notes courts have held that an undue burden may exist if a subpoena seeks information that is not relevant to the case.

The Plaintiffs assert that Defendant has not provided a basis for a finding that the subpoena would subject Mark Wade to an undue burden. Mr. Wade works at the IRS office in Springfield, Illinois, and lives nearby. The Plaintiffs state they are not seeking privileged or other protected matter.

The Plaintiffs further note that Mr. Wade prepared an Examination Report, which they believe contains several factual errors.  They allege that his testimony may be useful in establishing a material fact as to the Notice of Deficiency.

The Court is unable to conclude that the subpoena subjects Mark Wade to an undue burden.  The motion to quash on that basis is denied.

The Defendant further asserts that even if Mark Wade's testimony were marginally relevant, the Court should still quash the subpoena pursuant to Rule 403 of the Federal Rules of Civil Procedure.  Because the

IRS is not on trial, it is not appropriate to allow the Plaintiffs to try to make the case about what the IRS did or did not do at the administrative level. Any such testimony would be unduly prejudicial under Rule 403.

Because this case is set for a bench trial, the Court need not make a pre-trial determination whether the probative value of Mark Wade's testimony would be outweighed by the danger of unfair prejudice. Moreover, Counsel for the Defendant is free to object to any questions he believes are inappropriate.

The motion to quash the subpoena issued to IRS Revenue Agent Mark Wade will be Denied.

## II. Motion to Preclude Expert Testimony

### (A)

Defendant United States of America has moved in limine to preclude any expert opinion testimony from Mack Motes regarding whether Harold and Wilma Stuller carried on their horse-breeding operation with the intent of earning a profit. In support of the motion, the Defendant alleges (1) Mack Motes is not adequately qualified by experience or otherwise to

4

render such testimony under Rule 702 of the Federal Rules of Evidence; (2) Mack Motes's opinions are not based on a reliable methodology or a sufficient factual foundation as required by Rule 702; and (3) the opinions to which Mack Motes will presumably testify at trial have not been properly disclosed to the United States, as required under Rule 26(a)(2)(A), of the Federal Rules of Civil Procedure.

Alternatively, if the Court does not exclude the testimony at this time, the Defendant requests that Counsel be allowed to *voir dire* Mack Motes regarding his qualifications and methodology, *inter alia*, and have the opportunity at that time to renew the motion.

The Defendant's motion concerns whether Mack Motes may testify as an expert on the issue of whether the Stullers carried on their horse-breeding operation with the intent to earn a profit within the meaning of 26 C.F.R. § 1.183-2, such that they could deduct the losses from that operation during the 2003, 2004, and 2005 income tax years. The Defendant states that Mack Motes is the current husband of Wilma Stuller-Motes. Mr. Motes worked for twenty years as a manager of Harold and

Wilma Stuller's horse-breeding operation.

The Defendant contends that Plaintiff's expert disclosures consist of a cover letter, and a two-page affidavit from Mack Motes dated October 2, 2009, approximately seventeen months before the litigation commenced. Counsel for the Plaintiffs advised Counsel for the Defendant that the affidavit was Mr. Motes's expert report in this case.  Counsel then re-sent the affidavit with a typed heading reading "Expert Report."  The Defendant states that despite this disclosure as an expert, when at his deposition Mr. Motes was asked "Are you prepared to render any opinions regarding LSA, Inc. horse farm in this case?," he responded "No, ma'am."  At the deposition, Mr. Motes further denied that he is an expert, and denied that he is testifying as an expert in this case.  The Defendant claims that since that testimony, there has been no supplement or an attempt to establish that Mr. Motes is an expert.

Mack Motes is listed as an expert witness for the Plaintiffs.  The Defendant contends that the qualifications and methodology of Mr. Motes do not satisfy the requirements of Rule 702, and the Plaintiffs' expert

disclosures do not satisfy the requirements of Rule 26(a)(2)(A).

Rule 26(a)(2)(A) provides that a party must disclose to the opposing party the identity of an expert witness.  *See* Fed. R. Civ. P. 26(a)(2)(A).  A witness "retained or specifically employed to provide expert testimony" or "one whose duties as the party's employee regularly involve giving expert testimony" must provide a written report.  *See* Fed. R. Civ. P. 26(a)(2)(B). If a witness is not required to submit a written report, he must still disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  *See* Fed. R. Civ. P. 26(a)(2)(C).

The Plaintiffs complied with Rule 26(a)(2)(A) in disclosing Mack Motes as their expert.  Because Mr. Motes was not specifically retained or employed as an expert and because he does not provide expert testimony as part of his regular duties, it appears that Rule 26(a)(2)(C) is applicable.

Although there is very little, if any, analysis in Mack Motes's affidavit/expert report, the document contains facts and opinions which are

7

apparently intended to support the Plaintiffs' assertion that the horse-breeding operation was carried out with the intent to earn a profit. The Court concludes that the disclosure is consistent with the language of Rule 26(a)(2)(C), which does not require extensive detail. Moreover, because the Defendant had an opportunity to depose Mr. Motes, the Court is unable to conclude that it will be prejudiced by the alleged deficiencies of his affidavit/expert report.

(B)

The Defendant further alleges that based on the standards of Federal Rule of Evidence 702, Mack Motes is not qualified to opine on the issue of whether the Stullers' horse-breeding operation was carried on with the intent to earn a profit. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and

8

methods to the facts of the case.

Fed. R. Evid. 702.

In support of its assertion, the Defendant notes that Mack Motes has never before testified as an expert and stated at his deposition that he is not testifying as an expert in this case and is not rendering any opinions in this case.

The Plaintiffs point out that Mr. Mote has over 50 years of experience as a breeder, seller, purchaser, and trainer of the types of horses that were owned by the Plaintiffs.  He has received awards associated with horse training and breeding.  Mr. Motes has worked for the Plaintiffs for over 20 years and was manager of their horse farm business at the time at issue from 2003-2005.

The Defendant claims that Mr. Motes is not qualified on the basis of his education to testify on the topic of whether a horse-breeding operation is maintained with the intent to earn a profit.  The highest level of education completed by Mr. Motes is his sophomore year of high school. Thus, Mr. Motes did not take any post-secondary courses in business or

economics.

In addition to lacking the necessary education, the Defendant alleges Mr. Motes does not have the requisite knowledge, skill, training or experience sufficient to testify whether a horse-breeding operation is maintained with the intent of earning a profit. Although Mr. Motes has experience selling his own horses, training and caring for the Stullers' horses and observing their horse-breeding operation, the Defendant claims those experiences do not qualify him to testify as an expert as to the Stullers' business intent. The Defendant notes Mr. Motes testified he was not aware how much income he generated from his own horse business. Moreover, Mr. Motes testified he had no role with the finances of that Stullers' horse-breeding operation and did not know how their farm was doing financially. The Defendant asserts that based on Mr. Motes's testimony, it is reasonable to conclude that he does not have experience in the financial aspects of operating a horse-breeding operation.

The Plaintiff contends that Mr. Motes's experience in breeding, training and selling horses, and observations as to how the Plaintiffs

operated and maintained their horse business, qualifies him to offer opinions as to whether the operation was maintained with the intent to derive a profit.

The Court concludes that, based on Mack Motes's own words and other relevant circumstances, there are serious questions as to whether Mr. Motes has the "knowledge, skill, experience, training, or education" to testify as an expert regarding whether the Stullers' horse-breeding operation was carried on with the intent to earn a profit.

The Defendant further alleges that Mack Motes's opinion is not sufficiently reliable to testify at trial. The Seventh Circuit has assumed that the reliability and relevancy requirements for expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) apply in a bench trial. *See Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748, 760 (7th Cir. 2010). However, because there is no concern that a jury will hear unreliable expert testimony, a court conducting a bench trial can defer making reliability determinations until after the evidence is presented. *See id*.

11

An expert may testify based on his experience rather than data. *See id.* at 761. In so doing, however, the expert must explain the "methodologies and principles" on which he relies and cannot simply provide a "bottom line." *Id.* (citations omitted). "Mere conclusions, without a 'hint of an inferential process,' are useless to the court." *Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 881 (7th Cir. 2011). Moreover, expert testimony may not be based on subjective belief or speculation. *See Metavante Corp.*, 619 F.3d at 761.

In support of its motion, the Defendant claims that based on Mack Motes's affidavit/expert report and his deposition, it does not appear that he used any methodology. Mr. Motes's report does not include substantive analysis and consists mostly of conclusory opinions. The report does not address any of the nine factors listed in 26 C.F.R. § 1.183-2(b), which are used to determine if an activity was engaged in for profit.

The Defendant notes that at his deposition, Mr. Motes stated that his opinion of whether the Stullers' horse-breeding operation was carried on with the intent to earn a profit is based solely on his observations of Wilma

Stuller.   However, Mr. Motes was not aware of the Stullers' personal finances or the finances of the horse-breeding operation.   Moreover, it did not appear he had reviewed any relevant financial documents prior to his deposition.

Based on the information in the record, the Court finds that there are serious questions regarding whether Mack Motes's testimony is sufficiently reliable to be admissible as expert testimony.   Because this is not a jury trial, however, the Court can make such a determination at any time–including after the witness testifies.   Rule 705 provides:

> Unless the court orders otherwise, an expert may state an opinion–and give the reasons for it–without first testifying to the underlying facts or data.   But the expert may be required to disclose those facts or data on cross-examination.

Fed. R. Evid. 705.   The Court will follow this procedure.   Despite the questions about the reliability of the proposed testimony, the Court declines at this time to exclude it.   The parties can examine the witness. The Court will determine the admissibility of the testimony at some time thereafter.

Accordingly, the Court will hold in abeyance the motion in limine to

13

preclude Mack Morris from testifying as an expert on the issue of whether the Plaintiffs carried on their horse-breeding operation with the intent of earning a profit.

## III. Evidence Regarding Expectation of Increase in Property Value

### (A)

Defendant United States of America has also moved in limine to exclude evidence regarding the Plaintiffs' expectation that certain property would increase in value under 26 C.F.R. § 1.183-1(d).  Specifically, the Defendant seeks an Order in limine excluding any evidence in support of the Plaintiffs' claim that their breeding operation was conducted for profit due to any expectation that the property owned by Wilma Stuller Motes and Harold Stuller at 1489 Cheatham Springs Road, Eagleville, Tennessee ("the Cheatham Property") would increase in value.  The Defendant claims such evidence would be irrelevant to this case.

Determining whether an activity was conducted for profit or as a hobby involves the application of a nine-factor test.  *See* 26 C.F.R. § 1.183-

14

2(b).  The fourth factor asks whether the plaintiff had an expectation that assets used in the activity would increase in value.  *See id.* at (b)(4).  Before such an inquiry, however, the Court must ascertain the scope of the activity under 26 C.F.R. § 1.183-1(d)(1), which provides in part that if the taxpayer held land primarily to profit from its increase in value, holding that land and farming on that land (which includes horse breeding) can only be considered a single activity if the farming activity was self-supporting such that its profits helped fund the holding of the land.   Although the Commissioner generally accepts the taxpayer's characterization as to whether several undertakings constitute a single activity or separate activities, the taxpayer's characterization will not be accepted if it "cannot be reasonably supported under the facts and circumstances of the case."  *See* 26 C.F.R. § 1.183-1(d).

Relying mostly on the deposition of Wilma Stuller Motes, the Defendant alleges the evidence suggests that, if the Plaintiffs held the land for any business purpose, the Stullers held the Cheatham Property with the intent to profit from its increase in value.

15

The Stullers began breeding horses sometime prior to 1979, when they began boarding horses with Mack Motes for training.  The operation was expanded in 1985, when they purchased their first horse farm.  The Stullers also owned a successful business which operated up to five Steak 'n' Shake franchises.  In 1992, they began operating the breeding business under the name LSA, Inc., a/k/a LSA Farms, Inc. (("LSA").  They purchased the Cheatham Property in 1995 and held it either individually or as trustees of trusts which bore their own names.  Ms. Stuller-Motes testified at her deposition that she purchased the Cheatham Property because she encountered a rattlesnake at the property she had previously used for horse-breeding.  Additionally, she said she was able to sell the prior property at a profit and the Cheatham Property was in a good location, closer to her trainer, and had good pasture, so it would be a good location for her to raise horses.  In 1999, Ms. Stuller-Motes added to the Cheatham Property by purchasing an adjacent area, which she intended to use for hay production.

The Defendant asserts that assuming Ms. Stuller-Motes bought the Cheatham Property with an eye towards having a good location to run LSA,

16

the evidence establishes that if she continued to hold it for any business purpose after LSA suffered substantial and continuing losses, it was because of its potential increase in value.  As previously noted, Ms. Stuller-Motes testified she made a nice profit on the sale of the prior property she owned in Tennessee.  She also thought that the Cheatham Property would appreciate when she bought it and she considered selling it when the horse business was not doing well.

The Defendant's position that if the Stullers held the Cheatham Property for any business purpose, it was the intent to profit from its increase in value.  That is a plausible inference based on evidence in the record.  However, the Court is unable to conclude that the record demands such a finding.  As the Plaintiffs allege, the particular portion of the Plaintiff's motion contains a number of assumptions.  The Court declines to preclude the parties from presenting evidence on an issue simply because there are certain inferences that may be drawn based on discovery in this case.

The Plaintiff alleges the evidence will show that although Ms. Stuller-

Motes expected to make a profit on the Cheatham Property, it was the horse-breeding activity that caused her to obtain the Property. The Cheatham Property included additional pasture, land to grow hay, and land to add ponds for the horses. It was all related and integrated as part of the horse breeding business. Moreover, the Cheatham Property was closer to her trainer and her trainer's farm. The Plaintiffs claim the Cheatham Property was never treated as a separate activity and would not have been acquired but for the horse breeding business.

Based on these factual disputes, the Court declines at this point to find that Ms. Stuller-Motes held the Cheatham Property primarily with the intent to profit from its increase in value.

(B)

Assuming that the evidence did establish that Ms. Stuller-Motes's primary intent in holding the Cheatham Property was to profit from its increase in value, the Court would apply Treas. Reg. Section 1.183-1(d)(1), which provides in part:

> Where land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages

18

> in farming on such land, the farming and the holding of the
> land will ordinarily be considered a single activity only if the
> farming activity reduces the net cost of carrying the land for its
> appreciation in value.  Thus, the farming and the holding of the
> land will ordinarily be considered a single activity only if the
> income derived from farming exceeds the deductions
> attributable to the farming activity which are not directly
> attributable to the holding of the land (that is, deductions other
> than those directly attributable to the holding of the land such
> as interest on a mortgage secured by the land, annual property
> taxes attributable to the land and improvements, and
> depreciation of improvements to the land).

26 C.F.R. § 1.183-1(d)(1).  In other words, the activity conducted on the

property must be independently profitable, excluding deductions relating

to holding the property (such as rent and depreciation of improvements to

real property), such that the farming activity helps support the taxpayer's

holding of the land for appreciation.  *See Burrus v. Comm'r*, No. 14709-99,

2003 WL 22272897, at *8 (Tax Ct. Oct. 3, 2003).   A taxpayer's

"expectation of the land's appreciation as a factor bearing on whether the

farming was an activity engaged in for profit" is irrelevant.  *See LaMusga v.

Comm'r*, No. 7412-81, 1982 WL 11033, at  (Tax Ct. Dec. 29, 1982).

The Plaintiffs allege that the evidence will show that the horse

breeding business activities at the farm did reduce the net cost of carrying

19

the land during 2003, 2004 and 2005.  The Defendant claims that during those years, LSA lost roughly $175,829, or nearly $60,000 per year, excluding deductions for rent and depreciation of buildings and other improvements to real property.  Thus, assuming Ms. Stuller-Motes held the Cheatham Property primarily to profit from the appreciation in its value, the Defendant contends the Court should find as a matter of law that holding the Cheatham Property is a separate activity from LSA given that LSA lost money, not even counting the expenses related to the Cheatham Property and other real property.

Based on the apparent factual dispute regarding LSA's finances between 2003-2005, the Court at this time declines to find that holding Cheatham Property is a separate activity from LSA.

## (C)

The Defendant further alleges that even if Ms. Stuller-Motes had another intent in holding the Cheatham Property, LSA and the holding of the Cheatham Property were two separate activities because LSA's deductions, excluding deductions related to the holding of land, exceeded

20

its income.

Previously, the Court determined that factual disputes precluded it at this time from finding that Ms. Stuller-Motes was holding the Cheatham Property primarily to profit from its increase in value.  Accordingly, it must consider "the degree of organizational and economic interrelationship of various undertakings, the business purpose which is (or might be) served by carrying on the various undertakings separately or together in a trade or business or in an investment setting, and the similarity of various undertakings," in addition to any others facts and circumstances.  26 C.F.R. § 1.183-1(d)(1).

The Defendant alleges LSA and the Cheatham Property had no organizational interrelationship.  LSA and the ownership of the Property were separated.  LSA was its own corporate entity, while the Cheatham Property was owned individually by the Stullers or their trusts.  LSA had its own bank account while expenses of the Cheatham Property were presumably paid for by the Stullers's individual accounts.  Moreover, the Defendant contends that if the holding of the Cheatham Property and LSA

21

had not been organizationally separate, the Plaintiffs would risk losing the Property if LSA were sued, which is why Ms. Stuller-Motes's accountant advised her to own the Cheatham Property in her own name.

The Defendant asserts that LSA and the Cheatham Property had little economic interrelationship.  LSA did not financially support the holding of the Cheatham Property for appreciation.  Because the Stullers for several years loaned LSA more than the amount of rent, were it not for LSA, the Stullers could likely have been renting the land or otherwise generating profits, thus offsetting the costs of holding the land.

The Defendant further alleges there was little apparent purpose to engaging in horse-breeding and owning land together.  Operating LSA did not assist the Stullers in holding the Cheatham Property for appreciation. It appears LSA had trouble paying rent.  Moreover, but for LSA, a tenant may have been found who would pay rent or the Cheatham Property could otherwise have been used to produce commodities at a profit.

Finally, the Defendant notes that the activities are entirely different. Breeding horses and holding land for appreciation have little in common.

22

Applying the relevant factors, the Defendant claims that because holding the Cheatham Property for profit and operating LSA had little economic and organizational relationship, there was little reason to carry those activities on together.  Because the activities were different, the Defendant asks the Court to find that holding the Cheatham Property and operating LSA were two separate activities and exclude any evidence that Plaintiffs had an intent to make a profit from the operation of LSA because they expected the Cheatham Property to increase in value.

Should it reach this issue and if the facts are as alleged by the Defendant, then the Court will have no trouble concluding that the Stullers's holding of the Cheatham Property and operation of LSA were two separate activities.  Because this is a bench trial, however, the Court at this time declines to limit factual evidence on the issue.  The Court can apply the relevant statutes, regulations and case law during or after the trial.

(D)

The Court at this time declines to exclude any evidence in support of the Plaintiffs' claim that their horse breeding operation was conducted for

23

profit due to any expectation that the Cheatham Property owned by the Stullers would increase in value, based on the Defendant's assertion that the holding of the Cheatham Property and the horse-breeding operation were two separate activities. The Defendant may renew its motion in limine at a later time.

Ergo, the Motion in Limine of Defendant United States of America to Quash the Subpoena Issued to IRS Revenue Agent Mark Wade [d/e 29] is DENIED.

The Motion in Limine of Defendant United States of America to Preclude Mack Motes from Testifying as an Expert on the Issue of whether the Plaintiffs Carried on their Horse-Breeding Operation with the Intent of Earning a Profit or, in the alternative, to Allow *Voir Dire* with the opportunity to Renew this Motion [d/e 30] is hereby Held in Abeyance, as provided in this Order.

The Motion in Limine of Defendant United States of America to Exclude Evidence Regarding the Plaintiff's Expectation that the Property at issue would increase in value under 26 C.F.R. § 1.183-1(d) [d/e 31] is

DENIED, as provided in this Order.

ENTER: March 27, 2013

FOR THE COURT:

_s/Richard Mills_

s/Richard Mills
United States District Judge